## Sherred v. Pittsburgh.

Argued December 8, 1972, before Judges CRUMLISH, JR., MENCER and BLATT, sitting as a panel of three.

*Michael B. Kaleugher,* with him *Rosenberg, Kirshner & Solomon,* for appellant.

*Bernice Hummert,* Assistant City Solicitor, with her *Ralph Lynch, Jr.,* City Solicitor, for appellee.

OPINION BY JUDGE BLATT, January 25, 1973:

This is a workmen's compensation appeal. Mary Alice Sherred (claimant) was employed by the City of Pittsburgh as a recreation leader when, on August 12, 1968, she suffered a severe back sprain. She was placed on workmen's compensation as of August 14, 1968 and continued thereon until she returned to work on No-

vember 18, 1968. She left work again on March 19, 1969, returning on September 12, 1969. In November of 1969 she entered the hospital and has not since returned to the performance of her duties.

On January 14, 1970, the claimant filed a petition with the Workmen's Compensation Board (Board)[1] to review her compensation agreement, and the Board treated this as a Petition for Further Medical Services incurred after August 12, 1969. The matter was referred to a referee for hearing with a direction to return it to the Board for final disposition, this procedure being permitted by Section 415 of the Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, as amended, 77 P.S. §851, and the question of medical expenses being governed by Section 306(f) of the Workmen's Compensation Act, 77 P.S. §531, which at the time in question[2] read in pertinent part: "During the first twelve months after disability begins, the employer shall furnish reasonable surgical and medical services, services rendered by duly licensed practitioners of the healing arts, medicines, and supplies, as and when needed, unless the employe refuses to allow them to be furnished by the employer. . . . The board may order further medical, surgical and hospital services, if it is established that further care will result in restoring the injured employe's earning power to a substantial degree." Following the hearing, the Board issued an order awarding further compensation payments but denying the claimant's petition for additional medical expenses. It held that it had no authority to award compensation for medical expenses incurred prior to the filing of the Petition for Further Medical Expenses,

---

[1] Now the Workmen's Compensation Appeal Board.

[2] This section has recently been amended by the Act of March 29, 1972, P. L.     , No. 61, §12. We express no opinion as to what effect this amendment will have on medical expenses incurred by the claimant after its effective date.

and, as to those expenses incurred after that date (January 14, 1970), it found that the testimony presented on the claimant's behalf did not tend to indicate that medical treatment had been, or was likely to be, successful in restoring her earning power. The claimant appealed to this Court pursuant to the Act of February 8, 1972, P. L.     , No. 12, §3.

The testimony before the referee tended to show that the claimant suffered from both physical and psychological ailments as a result of her accident. Dr. David E. Foss testified that the claimant's back failed to respond to various non-surgical treatments and that he found it necessary to perform a lumbar fusion. This operation was performed on March 5, 1970, but the fusion was subsequently broken as the result of a fall, and an additional fusion was performed on October 5, 1971. Dr. Foss stated that, if this second fusion remained solid, the claimant would be able to return to work within one year, but that she could not lift anything then in excess of twenty-five pounds. As of the date of the hearing, which was about six weeks later, November 18, 1971, Dr. Foss estimated that there was a 90% chance that the operation would prove successful. Dr. Raymond L. Rau testified as to the claimant's psychological problems. He said that she suffered from a psychoneurosis, basically a severe depression, as a result of her failure to recover from the accident. He said that, if she failed to recover from her back injury, her prognosis was poor, but that, if she did recover physically, she had a better than 50% chance of getting over the psychoneurosis and returning to work.[3]

---

[3] It might be noted that the Board quoted Dr. Rau as saying that the claimant had only a 5% chance of recovering. Such a figure was taken out of context. Dr. Rau was there referring to the claimant's chances if she received no psychotherapy or tranquilizers, both of which she was receiving.

This Court has held that "our scope of review remains the same as it was prior to Act No. 12 of 1972, with the possible exception that Section 427 of Act No. 12 states: 'In any appeal to the Commonwealth Court, the scope of review shall be as provided in Section 44, Act of June 4, 1945 (P. L. 1388), known as the Administrative Agency Law.'" *Nash v. Sandnes' Sons, Inc.,* 6 Pa. Commonwealth Ct. 403, 404, 295 A. 2d 615, 616 (1972). Our scope of review, where the adjudication of the Board is against the party having the burden of proof (it would appear to us that the claimant, as the petitioning party here, has the burden of proof), is limited to the determination of whether or not the Board's findings of fact are consistent with each other and with its conclusions of law and its order and can be sustained without a capricious disregard of competent evidence. *Pellegrino v. Baldwin-Lima-Hamilton Corporation,* 5 Pa. Commonwealth Ct. 150, 289 A. 2d 531 (1972); *Gayer v. Quaker Hair Goods Company,* 5 Pa. Commonwealth Ct. 133, 289 A. 2d 763 (1972); *Frombach v. United States Steel Corp.,* 2 Pa. Commonwealth Ct. 556, 279 A. 2d 779 (1971); *State Workmen's Insurance Fund v. Young,* 2 Pa. Commonwealth Ct. 423, 276 A. 2d 552 (1971). "To constitute a capricious disregard there must be a wilfull and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching the result." *Brown v. Atlantic and Gulf Stevedores, Inc.,* 2 Pa. Commonwealth Ct. 481, 483, 279 A. 2d 372, 373 (1971).

An examination of the Board's adjudication, however, reveals that this Court cannot apply this rule as to scope of review because the adjudication fails to include any findings of fact or conclusions of law. Section 418 of the Workmen's Compensation Act, 77 P.S. §833, specifically provides that the Board "shall make, in writing and as soon as may be after the con-

clusion of the hearing, such findings of fact, conclusions of law, and award or disallowance of compensation or other order, as the petition and answers and the evidence produced before it . . . and the provisions of this act shall, in its . . . judgment require." No such findings or conclusions appear anywhere in the record.

Without findings of fact and conclusions of law, our task in interpreting the Board's actions would be extremely difficult. Such findings, moreover, should be sufficiently specific to enable this Court in its review to pass upon questions of law. When such findings and conclusions are not specific, let alone not existent, our only course is to remand the decision to the Board so that it may file what is needed to permit fair judicial scrutiny. *Frombach v. United States Steel Corp., supra.* The courts of this Commonwealth have frequently noted the necessity for findings of facts and conclusions of law in the decisions of other administrative agencies. *McKinley v. State Board of Funeral Directors,* 5 Pa. Commonwealth Ct. 42, 288 A. 2d 840 (1972); *Gottshall v. Batt,* 71 Dauph. 383 (1958); *Water and Power Resources Board v. Jones,* 70 Dauph. 284 (1957).

We accordingly make the following

ORDER

Now, January 25, 1973, the record in this case is remanded to the Workmen's Compensation Appeal Board with the direction that a proper adjudication be filed herein, in which there shall appear the necessary and proper findings of fact and conclusions of law.